IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


JOSEPH A BADAGLIACCA

     Petitioner,

v.                                         CASE NO. 1:09-cv-152-MMP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

     Respondent.

_____/


## REPORT AND RECOMMENDATION

     Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  The Respondent filed a response and an appendix with relevant portions of the state-court record, and Petitioner filed a reply. Docs. 15, 19.  Upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

### Summary of State-Court Proceedings

     An Alachua County grand jury indicted Petitioner and co-defendants Pamela Creedon, Robert Parra, and Shawn McKinley for first-degree murder, home invasion robbery, and conspiracy.  Special conflict counsel and co-counsel were appointed to represent Petitioner.  Petitioner pleaded guilty to second-degree murder, conspiracy, and home invasion robbery.  Pursuant to a plea and cooperation agreement, Petitioner agreed to provide testimony about the murder in exchange for a total sentence of 55

---

     [1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

years in prison.  App. Exh. M.

The State subsequently moved to set aside Petitioner's plea due to his refusal to testify in the prosecution of Pamela Creedon, who was subsequently acquitted.  The court conditionally granted the State's motion, subject to a ruling on whether Petitioner's proffer in connection with his plea would be admissible in his trial.  App. Exh. N.  The court ruled that the statement was admissible and afforded Petitioner a further opportunity to decide whether he wanted to follow through with his plea and cooperation agreement.  Petitioner testified that he did not, and the court set aside the plea and set the case for trial.  App. Exh. O.

Petitioner's counsel unsuccessfully sought to suppress the two confessions that Petitioner gave to New York and Alachua County officers following his arrest, as well as to suppress Petitioner's proffer under the plea agreement.  The substance of the confessions may be summarized as follows.  Petitioner and Creedon traveled from New York to Florida after Petitioner took his grandfather's car.  Creedon worked as an exotic dancer; she also has been referred to as an "escort".  They eventually traveled to Gainesville and met Robert Parra and Shawn McKinley.  Creedon and Petitioner, Parra, and McKinley discussed robbing Walter Alban, who was one of Creedon's clients, because Creedon said that Alban had money and jewelry.  They planned that Creedon would enter Alban's house, and then unlock a window for Parra.  Creedon would take Alban upstairs and choke him and then unlock the front door for Petitioner and McKinley to enter and look for money and jewelry.  They also planned to take Alban's truck and return to New York.   According to Petitioner, Parra choked Alban while Petitioner and McKinley kicked the victim.  Petitioner broke a wine bottle over the victim's head.

Petitioner and McKinley also choked the victim with an electrical cord.  The group found $60 in cash, a checkbook, phone card, and Visa card.  They left in the victim's truck and then traveled to New York, where Petitioner was eventually arrested.  Petitioner told police that although robbery was the first object of the conspiracy, he wanted to show Creedon that he would do anything for her, including killing Alban, to prove how much he loved her.  Petitioner also drew a diagram of the crime scene.  App. Exh. E at 413-18.

In addition to the two confessions and the plea proffer, the State's trial evidence included: testimony by Christie Davis, a friend who drove the four conspirators to Alban's house; testimony of co-defendant McKinley; testimony by crime scene investigators; photographs of the victim and other physical evidence from the crime scene; testimony by the New York and Alachua County officers who arrested Petitioner and took his confessions; and testimony by the medical examiner.

The jury convicted Petitioner of first-degree murder, home invasion robbery and conspiracy, and he was sentenced to life without parole on the murder charge, to 247.75 months on home-invasion robbery and to 15 years on conspiracy, with all sentences to run concurrently.  App. Exh. A at 179-86.  Petitioner raised three claims on appeal: the order denying the motion to suppress his statements, the admission of multiple pictures of the victim's body, and the cumulative effect of those two alleged errors.  The First District Court of Appeal affirmed *per curiam*  without opinion.  App. Exh. S.

Petitioner filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800, contending that he was not given credit for two weeks time spent in the Alalchua County Jail following his sentence.  The court denied the motion, and the denial was affirmed on appeal.  App. Exh. U, V.

Petitioner filed a motion under Florida Rule of Criminal Procedure 3.850 raising claims of ineffective assistance of trial counsel.  The state postconviction court summarily denied relief and denied rehearing.  App. Exh. W, X,  Y.   The First DCA affirmed on all grounds except for "one minor particular," which it remanded so that the postconviction court could attach the portions of the record that conclusively refuted that particular claim.  App. Exh. BB.  The state postconviction court again denied relief and attached additional pages from the record.  App. Exh. CC.  The First DCA affirmed *per curiam* without written opinion.  App. Exh. DD.

The instant Petition followed.  Respondent concedes that the Petition is timely, and the Court's review of the record also shows that the Petition is timely.  Petitioner enumerates 24 claims for relief, most of which involve allegations of ineffective assistance of trial counsel.  Doc. 1.  Respondent contends that some of Petitioner's claims are unexhausted and procedurally defaulted.  Doc. 15.  Such procedural arguments will be addressed in turn as to each claim.

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to

"pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*.  at 1302, 1306.

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); see § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly

established Federal law, as determined by the Supreme Court of the United States,"

refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower

federal courts may be considered to the extent that they demonstrate how those courts

applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir.

2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions

for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions

demonstrate that the Supreme Court's pre-existing, clearly established law compelled

the circuit courts (and by implication would compel a state court) to decide in a definite

way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§

2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases

"[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,*

535 U.S. 685, 694 (2002) (citing *Williams* ).  "Under the 'contrary to' clause, a federal

habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a case

differently than this Court has on a set of materially indistinguishable facts. Under the

'unreasonable application' clause, a federal habeas court may grant the writ if the state

court identifies the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529

U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require

citation of our cases-indeed, it does not even require *awareness* of our cases, so long as

neither the reasoning nor the result of the state-court decision contradicts them." *Early v.*

*Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id*. at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the

reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable.  *Gill*, 133 F.3d at 1290.

### Ineffective Assistance of Counsel

Because most of Petitioner's claims allege ineffective assistance, a review of the applicable law is necessary.  Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions."

*Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy."  *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc).  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]."  *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome."  *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington* 131 S.Ct. at 786.  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal

law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one."  *Id.* at 788.  When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.  Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

**Claim 1: Counsel's advice regarding plea agreement and proffer**

Petitioner contends that his counsel during the plea, Craig DeThomasis, failed to

fully inform Petitioner that his proffered statement could be used against him if Petitioner breached the plea agreement.  Petitioner's plea agreement required him to provide a complete and truthful account of the robbery and murder and to testify against the co-defendants.  The agreement further provided that if he violated the agreement by refusing to testify against a co-defendant, then "any statements made by the Defendant through the proffer or testimony described herein may be used against him . . . although no statements made by the Defendant to the Court solely as a part of and during the execution of this plea agreement may be so used."   App. Exh. A at 63-64.  Petitioner contends that he would not have entered into the plea agreement had he understood that provision.  Doc. 1.

This is the same claim that led to the First DCA's remand to the postconviction court to attach additional portions of the record.  In rejecting this claim initially and on remand, the postconviction court noted that the trial court had conducted a hearing to ascertain whether Petitioner understood the ramifications of the cooperation agreement as it related to his proffer.  At the May 11, 1999, hearing on the admissibility of the proffer, Alachua County Sheriff's Office Detective Mike Lentz testified that he was present at a meeting in the State Attorney's office on August 28, 1998, along with Petitioner, DeThomasis, Rod Smith, and Bill Cervone.  The purpose of the meeting was to execute a plea agreement, after which Petitioner would make a statement.  Lentz testified that Petitioner acknowledged reviewing the plea agreement, and then Smith "told him that by signing this agreement that he would be available for testimony at any time . . . .  If he did not testify then any statements that he had made would be used against him in a trial which they were trying for a first degree murder charge."  Lentz

testified that Petitioner said he understood that.  Petitioner executed the plea agreement and then proffered his statement explaining his involvement in the crimes. App. Exh. Z.

At the conclusion of this hearing, the trial court found that Petitioner's proffer was made voluntarily at the performance stage of the plea, and that the rule that would have precluded admissibility of statements made as part of plea negotiations or execution of the plea did not apply to Petitioner's proffer.  *Id*.

In rejecting the ineffective-assistance claim stemming from this ruling, the postconviction court determined that the record of the hearing conclusively refuted Petitioner's claim as to whether he understood his proffered statement could be used against him.  The court further concluded that Petitioner did not show any prejudice stemming from counsel's performance because even if the proffer had not been introduced at trial the jury would have heard testimony about Petitioner's other two confessions.  App. Exh. W at 127-49; Exh. Z at 599-600.

The trial court's findings of fact regarding Petitioner's understanding of the plea agreement are entitled to a presumption of correctness, and Petitioner points to no clear and convincing evidence that would support a conclusion that the trial court's findings were objectively unreasonable.  On this record, Petitioner has failed to show that he did not understand how his proffer could be used because his counsel did not explain the plea agreement to him.  Further, he has shown no prejudice.  He contends that he would not have pleaded guilty had he understood what would happen if he breached the agreement, but if Petitioner had not pleaded guilty he would have gone to trial.  Based on the Court's review of the trial record, there is no reasonable probability that the result of the trial would have been different if Petitioner's proffer had not been introduced.

Petitioner has failed to show that the state court's decision rejecting this ineffective-assistance claim on both the deficient performance and prejudice prongs of *Strickland* reflects an unreasonable determination of the facts, or was contrary to, or an unreasonable application of, Federal law.

### Claim 2: Denial of motions to suppress proffer and confessions

Petitioner contends that the trial court erred in denying the motions to suppress his proffered statement during the plea process and the two confessions he gave to law enforcement.  As to his proffer, Petitioner contends that the statement was made in "furtherance of on-going plea negotiations."  As to the confessions, he contends that his statements were not made knowingly, voluntarily, and intelligently, and that he questioned his need for counsel while he was being interrogated.  Doc. 1.

The trial court conducted an evidentiary hearing on Petitioner's motions to suppress at which the two New York detectives testified by telephone, and Detective Lentz testified in person.  App. Exh. G (transcript of suppression hearing).  With respect to the confessions given in New York, the testimony reflected that Petitioner was given his *Miranda*[2]  warnings immediately after his arrest while he was being transported to the police station, and that he waived his rights in the presence of three officers.  Petitioner gave a statement on the way to the police station.  Upon arriving at the station, Petitioner was again read the *Miranda* warnings and signed a waiver of his rights; the waiver was initialed by the three officers present.  Detective Lentz then arrived, and read Petitioner the *Miranda* warnings for a third time.  Petitioner executed a written waiver of his rights, and then gave Lentz a second confession, which Lentz recorded in writing.  All

---

[2]*Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

witnesses testified that Petitioner was cooperative, coherent, and that at no time was he threatened or coerced to make a statement.  Based on this testimony, the trial court found that "I have no facts or evidence whatsoever as a basis to suppress the admissions or confessions in New York."  *Id.* at 681.

The trial court's findings are clearly supported by the evidence adduced at the suppression hearing.  The court's findings are afforded a presumption of correctness, and Petitioner points to no clear and convincing evidence that would support a conclusion that the trial court's findings were objectively unreasonable.  Petitioner's conclusional and self-serving statements to the contrary are not clear and convincing evidence.[3]

Petitioner also contends that it was error for the trial court to permit the New York officers to testify by telephone at the suppression hearing.  All parties consented to the telephonic testimony.  Petitioner has made no showing that permitting such testimony at a suppression hearing violated any federal constitutional right.  The New York detectives testified in person at Petitioner's trial, and therefore Petitioner's rights under the Confrontation Clause were satisfied.

With respect to Petitioner's plea proffer, Petitioner's counsel argued that the statement was inadmissible pursuant to Fla. R. Crim. P. 3.172(h), which provides that statements made "in connection" with an offer or a plea of guilty later withdrawn are

---

[3]Respondent contends that Petitioner's claim that he questioned his need for a lawyer and was told he did not need one is unexhausted because Petitioner presented no testimony to support the claim at the suppression hearing and did not raise it on appeal.  Because it is clear that Petitioner is not entitled to relief on the merits, the Court may deny relief notwithstanding any failure to exhaust.  *See* 28 U.S.C § 2254(b)(2).

inadmissible in a subsequent criminal proceeding.  Detective Lentz testified at the
suppression hearing that Petitioner executed the plea agreement prior to making his
proffer.  The trial court entered a written order denying the motion to suppress the
proffered statement because the court found, based on the testimony, that Petitioner's
plea agreement was a *fait accompli* before he gave the statement, and since the proffer
was made after Petitioner agreed to the bargain it was admissible.  App. Exh. X at 282-
84 (citing *Wainwright v. State*, 704 So.2d 511 (Fla. 1997); *United States v. Stirling*, 571
F.2d 708 (2nd Cir. 1978); and *Groover v. State*, 458 So. 2d 226 (Fla. 1984)).   The
finding that the plea agreement was completed before the statement was made is
afforded a presumption of correctness, and Petitioner points to no clear and convincing
evidence that would support a conclusion that the trial court's finding was objectively
unreasonable.

Moreover, a state trial court's evidentiary rulings do not provide a basis for federal
habeas relief absent a showing that the ruling affected the fundamental fairness of the
trial.  *See Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998).  Even if erroneous, a
Petitioner must show that the ruling "'had [a] substantial and injurious effect or influence
in determining the jury's verdict.'" *Id*.  (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623
(1993)).  In this case, in light of the record as a whole, Petitioner has not shown that the
trial court's ruling affected the fundamental fairness of his trial.  In view of the
overwhelming evidence of Petitioner's guilt, including his two prior confessions which the
plea proffer merely corroborated, Petitioner has not shown that this ruling had a
substantial and injurious effect or influence on the verdict.

In sum, Petitioner has failed to show that the state court's denial of his motions to

suppress reflects an unreasonable determination of the facts, or was contrary to, or an unreasonable application of, Federal law.

### Claim 3: Ineffective Assistance at Suppression Hearing

Petitioner contends that his counsel rendered ineffective assistance by failing to call him to testify regarding the admissibility of his inculpatory statements.  Petitioner contends that his testimony would have supported the written arguments made in counsels' pleadings.   Specifically, Petitioner contends that with respect to the admissibility of his plea proffer, he would have testified that his proffered statement was made in connection with what he felt were plea negotiations.  With respect to his confessions in New York, Petitioner contends that he would have testified that he questioned the need for counsel at the time of his arrest, but questioning by the police never ceased, in violation of his *Miranda* rights.  Doc. 1 at 9; Doc. 19 at 22-26.

A review of the May 11, 1999, hearing transcript and the transcript of the suppression hearing reflects that counsels' arguments focused on the timing of the execution of the plea agreement relative to Petitioner's proffer, and whether the facts of Petitioner's case fit within the case authority governing the admissibility of statements made in the course of plea proceedings.  *See* App. Exh. G at 62-63, Exh. Z at 20-22. Given the testimony adduced by the State regarding the timing of the plea agreement and the proffer, such a strategy was not unreasonable, nor can the Court say that it was unreasonable not to call Petitioner to testify regarding his subjective beliefs. "Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  *United States v. Guerra*,

628 F.2d 410, 413 (5th Cir. 1980). Moreover, In light of the evidence before the trial court and the rationale for ruling that the proffer was admissible, there is no reasonable probability that, but for counsel's failure to have Petitioner testify regarding his subjective beliefs, the result of the proceeding would have been different.

For the same reasons, Petitioner has failed to show that it was unreasonable for counsel not to call him to testify regarding the voluntariness of his post-arrest confessions, given the deference that is afforded to counsel's decisions regarding the presentation of testimonial evidence. Viewing the record as a whole, there is no reasonable probability that but for counsel's failure to present such testimony, the outcome of the proceeding would have been different.

In sum, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, Federal law.

### Claim Four: Ineffective Assistance During Plea Colloquy

Petitioner contends that his counsel rendered ineffective assistance during the change-of-plea proceedings by conducting the plea colloquy himself instead of allowing the trial court to conduct the colloquy. Petitioner contends that he was not found to have known all of the consequences of giving his proffered statement, and that he was not advised of the minimum and maximum sentences that he faced.

The state postconviction court rejected this claim based on its previous finding, discussed above, that the record reflected that Petitioner understood at the time of his plea that his proffered statement could be used against him if he breached the plea

agreement.  The state court further noted that the plea colloquy reflected that Petitioner had been advised that he faced the death penalty if he proceeded to trial.  App. Exh. W at 144-45.  As explained above, the record supports these findings and accordingly the state court's rejection of this claim does not reflect an unreasonable determination of the facts.  *See* App. Exh. W 169-99, Exh. X 201-03.

Moreover, Petitioner has failed to show that any errors by counsel during the plea colloquy provides any basis for federal habeas relief under the facts of this case.  In the guilty plea context, to show prejudice Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The requirement of a showing of prejudice in the guilty-plea context serves "the fundamental interest in the finality of guilty pleas."  *Id*. at 58.  The inquiry as to whether a reasonable probability exists that a defendant would have insisted on going to trial "should be made objectively, without regard for the 'idiosyncracies of the particular decisionmaker.'"  *Id.* at 60 (quoting *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984)).   By pleading guilty, Defendant avoided a potential death penalty.  The record presents no objective basis from which the Court could conclude that Defendant would have insisted on going to trial but for the fact that counsel, and not the court, conducted the plea colloquy.  Even if Petitioner's counsel did not advise him during the colloquy that his proffer could be used against him if he breached the plea agreement, as explained above the trial court found after a hearing that Petitioner knew of that consequence when he executed the plea agreement prior to the colloquy.   The state court's rejection of this ineffective-assistance

claim was neither contrary to, nor an unreasonable application of, Federal law.

**Claim Five: Ineffective assistance regarding reprosecution**

Petitioner contends that his counsel should have challenged his jury-trial conviction and sentence on double jeopardy grounds because the state court's acceptance of his plea was not based upon any contingencies or requirements in the plea agreement.  The state postconviction court rejected this claim because it concluded that Petitioner entered a conditional plea, that he breached a condition of the plea, and the double jeopardy clause does not bar reprosecution of a defendant who refuses to perform a condition of a guilty plea.  Therefore, counsel did not err by failing to object on double jeopardy grounds.  App. Exh. W. at 148 (citing *Brown v. State*, 367 So.2d 616, 623 (Fla. 1979)).

A state court's "construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law[.]" *Ricketts v. Adamson*, 483 U.S. 1, 7 n.3 (1987).  "[O]nce a state court has, within broad bounds of reasonableness, determined that a breach of a plea agreement results in certain consequences, a federal habeas court must independently assess the effect of those consequences on federal constitutional rights.  This independent assessment, however, proceeds without second-guessing the finding of a breach and is not a license to substitute a federal interpretation of the terms of a plea agreement for a reasonable state interpretation."  *Ricketts*, 483 U.S. at 7 n.3.

Petitioner has not shown that the state court's conclusion that the plea was conditional on performance of the plea agreement was unreasonable.  The agreement

expressly provides that the State could revoke the agreement and move to vacate his

guilty plea if Petitioner refused to testify as agreed, and could bring Petitioner "to trial on

any and all charges for which he might have been tried originally and seek any sentence

that might be lawful should any conviction result, including the death penalty in the event

of a conviction for First Degree Murder."  App. Exh. W. at 159-60.   A plea agreement

specifying that charges may be reinstated upon certain circumstances is equivalent to an

agreement waiving a double jeopardy defense.  *Ricketts*, 483 U.S. at 10.  Under these

circumstances, counsel did not render ineffective assistance by failing to assert a

defense that had no merit.  The state court's rejection of this ineffective-assistance claim

was neither contrary to, nor an unreasonable application of, Federal law.

### Claim Six: Ineffective assistance regarding speedy trial rights

Petitioner contends that his rights were violated following the withdrawal of his

guilty plea because counsel allowed the case "to linger in legal limbo for three years and

nine months," before trial commenced, and that counsel should have sought dismissal

based on unreasonable delay.  Counsel sought and obtained several continuances of

the trial date due to proceedings involving a co-defendant, Robert Parra, and scheduling

conflicts.  *See App. Exh. A*, 99-101, 122-25, 127-29.  The state postconviction court

rejected this claim, raised pursuant to Fla. R. Crim. P. 3.170(g)(2)(D), because Petitioner

did not allege that he asked for or wanted a speedy trial.  The court further observed that

Petitioner failed to specifically allege any prejudice by the delay, other than asserting

that the State had more time to prepare.  The court observed that the delay gave

Petitioner's counsel more time to prepare as well.  App. Exh. W at 144.

Although an ineffective-assistance-of-counsel claim is a federal constitutional claim which federal courts consider in light of the clearly established rules of *Strickland,* when "the validity of the claim that [counsel] failed to assert is clearly a question of *state* law . . . we must defer to the state's construction of its own law."  *Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir.1984) (affording deference to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims") (*superseded on other grounds*); *see also Callahan v. Campbell,* 427 F.3d 897, 932 (11th Cir.2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them[.]" (internal quotation and citation omitted)).  In the same vein, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary,* 967 F.2d 530, 535 (11th Cir.1992); *Hunt v. Tucker,* 93 F.3d 735, 737 (11th Cir.1996) (federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation).

Thus, the state court's determination that Petitioner's rights under the state speedy trial procedural rule were not violated must be accorded deference.  The state court's further conclusion that Petitioner did not allege any specific prejudice from the delay  was not contrary to, or an unreasonable application of, *Strickland*.

To the extent that Petitioner's pleadings in the state court and here may be liberally construed as asserting a claim that his counsel failed to protect his federal speedy trial rights under the Sixth Amendment, he has made no showing that he is

entitled to federal habeas relief.  The test for adjudicating a Sixth Amendment speedy

trial claim requires a balancing of four factors: (1) the length of the delay; (2) the reasons

for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the

defendant.  *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972); *Doggett v. United

States*, 505 U.S. 647, 112 S.Ct. 2686 (1992).  When the delay between arrest or

indictment and trial is more than one year, there is a presumption of prejudice sufficient

to trigger application of the four part test as a whole.  *Doggett v. United States*, 505 U.S.

647, 112 S.Ct. 2686 (1992).

Petitioner's plea was set aside on May 25, 1999, and his trial commenced on

December 2, 2002.  Exh. A (docket).   Therefore, the *Doggett* test is triggered.  Despite

the rather lengthy delay, the remaining three factors weigh against a conclusion that

Petitioner's federal rights were violated.  In rejecting this claim, the state court noted that

Petitioner did not assert a speedy trial right, and that rather than causing the Petitioner

prejudice the delay actually allowed his counsel to complete preparation of Petitioner's

defense for trial.  Petitioner has not shown that counsel offered unreasonable reasons

for seeking continuances.  On this record, Petitioner has not shown that the state court's

rejection of this ineffective-assistance claim was contrary to, or an unreasonable

application of, Federal law.

### Claim Seven: Ineffective assistance regarding plea and sentence

Petitioner contends that he received ineffective assistance during his change of

plea proceedings because his counsel did not advise him that he was eligible for

sentencing as a "youthful offender" to a maximum six-year term, and that had he known

that he would not have entered into a plea agreement with a 55-year sentence.  The postconviction court rejected this claim because Petitioner had been charged with first-degree murder, a capital offense for which youthful offender sentencing was not an option absent agreement by the State.  Under the terms of the plea agreement with the State, which provided for a 55-year sentence in consideration of the guilty plea, the Court could not sentence Petitioner as a youthful offender.   App. Exh. Y at 575-76.

The Sixth Amendment right to the effective assistance of counsel extends to the plea-bargaining process.  *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399, 1407-08 (2012).  The nature of the plea bargaining process is such that "it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process."  *Id*. at 1408.  One duty that is clear is the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  *Id*.  The duty is triggered by a "formal" offer, one measure by which the prosecution and trial courts may "ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences."  *Id*. at 1408-09.

In this case, Petitioner faced a potential death sentence and the only offer he received from the State – which defense counsel obviously communicated – was an agreement to allow him to plead to a lesser offense conditioned on a 55-year sentence and performance of other conditions by Petitioner.  Petitioner points to nothing in the record that suggests the State would have considered a plea agreement with a six-year

sentence, let alone that any other offer (formal or otherwise) was made.  Any assertion that the State would have agreed to a plea with a six-year sentence is wholly speculative, and such a speculative assertion is insufficient to show that counsel performed deficiently in connection with Petitioner's plea proceeding such that habeas relief is warranted.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).

Moreover, Petitioner points to no plausible prejudicial connection between counsel's advice during plea negotiations and Petitioner's post-plea decision to breach the plea agreement and proceed to trial, which is the event that led to his harsher sentence.  The record reflects that Petitioner acknowledged that his counsel advised him it was highly unlikely that the State would come forward with any other plea offer following his breach of the plea agreement.  App. Exh. X at 250.

Because Petitioner's claim fails on both the performance and prejudice prongs of *Strickland*, he has not shown that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, Federal law.

### Claim Eight: Ineffective assistance regarding jury instructions

Petitioner's trial counsel used co-defendant Shawn McKinley's plea agreement to impeach McKinley's testimony against Petitioner.  Petitioner contends that counsel performed deficiently by not requesting a specific cautionary instruction advising the jury that McKinley's plea agreement could not be used as substantive evidence of Petitioner's guilt.  The state court on postconviction review found that counsel did not perform deficiently because counsel argued in closing that McKinley was the true murderer of the victim, not Petitioner, and the trial court gave the jury the standard

instruction on weighing the testimony of an accomplice.  The court instructed the jury that:

> You should use great caution in relying on the testimony of a witness who claims to have helped the defendant commit a crime. This is particularly true when there is no other evidence tending to agree with that witness – with what that witness says about the defendant.

App. Exh. F. at 592.

In view of the fact that the court gave an instruction regarding the weight afforded to accomplice testimony, it was not unreasonable for the state court to conclude that counsel was not deficient for failing to request a further limiting instruction.  Moreover, Petitioner has made no showing of prejudice, in light of the record as a whole.  To establish prejudice for counsel's failure to request a limiting instruction, Petitioner would have to show that it is reasonably likely that such an instruction would have made a difference in light of all the other evidence of guilt.  *Berghuis v. Thompkins*, ___ U.S. ___, 130 S.Ct. 2250, 2265 (2010).   The McKinley plea documents that were placed into evidence do not include a statement of facts or other description of the crime that could be considered as substantive evidence of Petitioner's guilt.  *See* App. Exh. (Defense Exhibits 1, 2, and 3).  The jury was capable of assessing McKinley's credibility, as it was instructed to do by the court, and there was ample evidence in the record to support the jury's verdict apart from any inferences that might have been drawn from  McKinley's plea documents.

Because Petitioner's claim fails on both the performance and prejudice prongs of *Strickland*, he has not shown that the state court's rejection of this ineffective-assistance

claim was contrary to, or an unreasonable application of, Federal law.

### Claim Nine: Ineffective assistance regarding Prosecutor's statements

Petitioner contends that his trial counsel rendered ineffective assistance by failing to object to the State's argument that a home-invasion robbery was committed due to the theft of the pickup truck parked outside of the victim's home.  Petitioner contends that theft of property outside the home does not constitute a home invasion robbery under state law.  The state court on postconviction review rejected this claim because the State did argue, and the trial evidence established, that the Petitioner took other items from the victim.  App. Exh. W at 133 (citing indictment and portions of trial transcript describing other stolen items).  As noted above, the victim was robbed of cash and credit cards, in addition to the pickup truck.  There is no arguable merit to this ineffective-assistance claim, and the state court did not unreasonably reject it.

### Claim Ten: Ineffective assistance for not securing exculpatory testimony

Petitioner contends that counsel rendered ineffective assistance by failing to secure the exculpatory testimony of Pamela Creedon following her acquittal. Specifically, Petitioner argues that Creedon would have testified to Petitioner's lack of intent to commit a crime after lawfully entering the victim's home, and that he "chickened out and withdrew from the criminal enterprise" and entered the victim's home to stop a crime from occurring.

The state court rejected this claim on postconviction review, noting that "*all* the evidence presented at trial, including that presented by the defense, indicates that Defendant committed the charged offenses against the victim," that he masterminded

the robbery and murder with Creedon, and acted to ensure the plan's success.  There

was no evidence at trial that Petitioner withdrew from or renounced his participation.

The state court noted that Creedon's testimony, as described by Petitioner, did not

provide any evidence as to what occurred inside the victim's house, and concluded that

Petitioner had not shown a reasonable probability that the outcome of the trial would

have been different if Creedon had testified.  App. Exh. W at 142.

As noted above, complaints concerning uncalled witnesses impose a heavy

showing.  Petitioner's allegation regarding what Creedon might have testified to is wholly

speculative and therefore insufficient to support a claim for habeas relief.  On this

record, the state court reasonably concluded that there was not a reasonable probability

that the outcome of the trial would have been different but for counsel's failure to obtain

testimony from Creedon.

### Claim Eleven: Ineffective assistance regarding jury instruction on "withdrawal"

Petitioner contends that his counsel performed deficiently by failing to request a

jury instruction on withdrawal when the defense had presented evidence, through co-

defendant Robert Parra's statement, that Petitioner "chickened out."  The state court

rejected this claim on postconviction review because there was no evidence of

withdrawal and the evidence in fact showed the Petitioner actively participated in the

murder.  App. Exh. W at 134.

Parra refused to testify at Petitioner's trial, but portions of his previous deposition

were read into the record.  Parra testified that he agreed to be the first one into the

house after Creedon subdued the victim, because Petitioner "chickened out".  The

remainder of Parra's testimony supports the conclusion that Petitioner willingly entered the victim's house and was an active participant in the murder.  *See* App. Exh. F. at 488-506.  Under state law, to be entitled to a jury instruction on the defense of withdrawal under the charge of felony murder, "the defendant would have to show renunciation of the impending murder and communication of his renunciation to his co-felons in sufficient time to allow them to consider refraining from the homicide."  *Smith v. State* 424 So.2d 726, 732 (Fla.1982).  Parra's testimony falls far short of providing the necessary showing.  The state court's conclusion that counsel did not perform deficiently by not requesting a jury instruction on withdrawal is reasonable and supported by the record.  Petitioner is not entitled to habeas relief on this ineffective-assistance claim.

### Claim Twelve: Ineffective assistance concerning jury instruction on "principals"

Petitioner contends that his trial counsel performed deficiently by failing to challenge the standard jury instructions for principals.  Petitioner contends that giving the standard instruction constructively amended the indictment because he was charged with committing the offenses, not with aiding and abetting.  The trial court rejected this claim on postconviction review because there was evidence presented at trial that supported the instruction.  App. Exh. W. at 136.

Under state law:

> Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

Fla. Stat. § 777.011.  As the state court found, under this law the State is entitled to an instruction on "principals" if there has been sufficient evidence to support the instruction. App. Exh. W at 136; *see State v. Roby*, 246 So. 2d 566, 571 (Fla. 1971) ("[A] person is a principal in the first degree whether he actually commits the crime or merely aids, abets or procures its commission, and it is immaterial whether the indictment or information alleges that the defendant committed the crime or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute.") ; *see also Roberts v. State*, 813 So. 2d 1016, 1017 (Fla. 1st DCA 2002).  The state court therefore concluded that counsel did not err by failing to object to the standard instruction.  Petitioner has failed to show that this conclusion was contrary to, or an unreasonable application of, Federal law.

**Claim Thirteen: Ineffective assistance in connection with murder instruction**

Petitioner contends that his trial counsel erred by failing to object to a variance from the standard jury instruction for first-degree murder.  The Florida Standard Jury Instruction for First-Degree Felony Murder states:

> To prove the crime of First Degree Felony Murder, the State must prove the following three elements beyond a reasonable doubt:
>
> 1. [Victim] is dead.
>
> *Give 2a, 2b, or 2c as applicable*
>
> 2. a. [The death occurred as a consequence of and while (defendant) was engaged in the commission of (crime alleged).]
>
> b. [The death occurred as a consequence of and while (defendant) was attempting to commit (crime alleged).]

c. [The death occurred as a consequence of and while (defendant), or an accomplice, was escaping from the immediate scene of (crime alleged).]

*Give 3a if defendant actual perpetrator*

3. a. [(Defendant) was the person who actually killed (victim) .]

*Give 3b if defendant not actual perpetrator*

b. [(Victim) was killed by a person other than (defendant); but both (defendant) and the person who killed (victim) were principals in the commission of (crime alleged).]

In order to convict of First Degree Felony Murder, it is not necessary for the State to prove that the defendant had a premeditated design or intent to kill.

Fla. Std. Jury Inst. (Crim) 7.3.

In this case, the jury was instructed:

Before you can find the defendant guilty of first degree felony murder, the state must prove the following three elements beyond a reasonable doubt:

1. William Alban is dead.

2. His death occurred as a consequence of, and while the defendant was engaged in the commission of, was attempting to commit or was escaping from the scene of a home invasion robbery. Home invasion robbery will be defined for you momentarily.

And 3. The defendant was the person who actually killed William Alban or William Alban was killed by a person other than the defendant but both the defendant and the person who killed William Alban were principals in the commission of the home invasion robbery.

App. Exh. F, 571-572.

Petitioner contends that the instruction was defective because it allowed the jury

to find Petitioner guilty if an "escape" from the scene of a home invasion robbery had

occurred, without regard to whether the "escape" was the cause of the victim's death.

The state court on postconviction review rejected this claim because the instruction given was substantially the same as the standard instruction, and thus counsel was not deficient, and there was no reasonable probability that the jury was confused by the instruction.

Petitioner's reading of the jury instruction is strained.  The instruction tracks the standard instruction and is clear as to what elements must be proved to find Petitioner guilty of felony murder.   Accordingly, the state court reasonably concluded that counsel was not deficient for not objecting to the instruction.  Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, Federal law.

### Claim Fourteen: Ineffective assistance regarding elements of home invasion

Petitioner contends that his counsel rendered deficient performance by failing to argue that the essential elements of "permission" and "ownership" were not proven beyond a reasonable doubt.  In state court on postconviction review, Petitioner presented this claim as alleging that counsel failed to challenge the trial court's jury instruction on home invasion robbery.  The state court rejected this claim because it concluded that counsel was not deficient for failing to object to standard jury instructions that have not been invalidated by the Florida Supreme Court.  App. Exh. Y at 576.[4]

The trial court instructed the jury that:

―――――――――――――――――

[4]Respondent contends that the instant claim was not fairly presented in the state courts.  Petitioner concedes that his claim in state court pertained to the jury instructions on home invasion robbery, but nevertheless contends that the instant claim was fairly presented in state court.  Doc. 19 at 60.  Because it is clear that Petitioner is not entitled to relief on the merits, the Court may deny relief notwithstanding any failure to exhaust.  *See* 28 U.S.C § 2254(b)(2).

Before you can find the defendant guilty of home invasion robbery, the state must prove the following three elements beyond a reasonable doubt:

1. Joseph Badagliacca entered the dwelling of William Alban.

2. At the time Joseph Badagliacca entered the dwelling, he intended to commit robbery.

3. While inside the dwelling, he did commit robbery.

App. Exh. F at 584.  These instructions are virtually identical to the standard instruction. *See* Fla. Std. Jury Instr. (Crim.) 15.3.

Petitioner contends that the essential elements were not satisfied because the victim "freely allowed" Petitioner and the co-defendants to enter the dwelling, the victim was not shown to be the "lawful owner" of the dwelling, and counsel should have raised such objections.  Doc. 1 at 29.  Petitioner's assertion that he was "freely allowed" to enter the victim's dwelling is contrary to the evidence, and his claim that the victim was not the "lawful owner" is conclusional and unsupported.  On this record, the state court reasonably concluded that counsel was not deficient for not objecting to the standard jury instructions that established the essential elements of home invasion to be found by the jury.

**Claim Fifteen: Ineffective assistance by failing to investigate and prepare**

Petitioner makes the broad assertion that his counsel performed deficiently by failing to subject the prosecution's case to meaningful adversarial testing because counsel did not investigate, prepare, "and do anything required to effectively defendant his client[.]"  Doc. 1 at 31.  In his reply, Petitioner elaborates somewhat on this claim by quoting from his Rule 3.850 motion, in which he argued that counsel did not use an

independent investigator, but relied upon previous counsel's investigation, and as defense evidence at trial presented only excerpt's of Parra's deposition.  Petitioner states that "[o]ther defenses were available, witnesses were not sought or deposed," and he suggests that counsel lacked experience.  He complains that counsel filed "boilerplate" motions for judgment of acquittal and for a new trial.  Doc. 19 at 61.

Initially, the Court concludes that Petitioner fails to assert any cognizable claim for federal habeas relief because this claim is wholly devoid of any specific information regarding how counsel was deficient or how the state court unreasonably rejected such a claim on postconviction review.

In rejecting this claim on postconviction review, the state court also determined that Petitioner's claims were conclusional and speculative.  The court observed that Petitioner failed to allege how counsel's failure to reinvestigate matters investigated by pretrial counsel was either erroneous or prejudicial.  The court concluded that this "failure to reinvestigate" claim was inconsistent with Petitioner's claim that he was not given a speedy trial.  The court observed that Petitioner failed to allege how counsel's purported inexperience affected the outcome of his trial.  App. Exh. Y at 575.

On this record, Petitioner has failed to show that the state court unreasonably rejected this vague and conclusional ineffective-assistance claim.

### Claim Sixteen: Ineffective assistance for failing to oppose certain evidence

Petitioner contends that counsel rendered ineffective assistance by failing to seek exclusion of the following evidence: (1) a bloodstained windbreaker found by a newspaper deliveryman in the vicinity of the crime scene, but which had been washed

before it was turned over to police; (2) a knife found in the victim's bedroom by his ex-wife after the crime scene had been investigated by police; (3) a photograph of a "hide-a-key" container found at the scene; (4) testimony of Mike Lentz and Rod Smith regarding his plea proffer; (5) Christie Davis' testimony that she did not receive favorable treatment from the prosecution.  Doc. 1 at 33.

       In rejecting this claim on postconviction review, the state court concluded that counsel did not perform deficiently with respect to each item of evidence, and that all of Petitioner's claims lacked merit.  With respect to the windbreaker, McKinley testified that Petitioner discarded a jacket as they were driving away, and he identified the jacket found by the deliveryman as very similar to the bloodstained jacket discarded by Petitioner.  App. Exh. D. at 275.  Petitioner argues that the jacket was "irrelevant" and "overtly prejudicial", but clearly the trial court disagreed, and, on this record, reasonably so.  The court noted that there was testimony about a knife being found after the investigation, and that counsel stipulated to how and where the knife was found.  The court explained that the testimony was offered to corroborate Petitioner's confession and the statements of the co-defendants, and the knife itself was not admitted into evidence. The court noted that the photograph of the hide-a-key container found at the crime scene corroborated the Petitioner's story of what happened, and was plainly relevant and material evidence.  The court observed – as discussed at length above – that counsel did in fact attempt to suppress testimony regarding Petitioner's plea proffer. The court found that it was not error for trial counsel to stipulate that the jury could be told that Davis was not charged because of the lack of evidence against her, because

Davis admitted in her testimony that she knew about the planned robbery, and counsel brought out on cross-examination that Davis was motivated to testify because she might face criminal charges if she did not.  App. Exh. W. at 137-40.

In the instant habeas case, Petitioner reiterates his complaints regarding the admission of this evidence, but he points to nothing in the record from which this Court could conclude that the state court unreasonably rejected this ineffective-assistance claim.   The evidentiary arguments that Petitioner says his counsel should have pursued would have had no chance of success in light of the other evidence adduced at trial, as explained by the state court.  Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, Federal law.

***Claim Seventeen: Ineffective assistance regarding Parra's testimony***

Petitioner contends that although his trial counsel presented a valid defense theory of withdrawal, his counsel performed deficiently by only using excerpts of Parra's deposition testimony and not the "more specific" testimony from a pretrial hearing. Petitioner does not identify the specific testimony that he contends should have been offered.  Doc. 1 at 35-36.  In rejecting this claim on postconviction review, the state court reviewed testimony given by Parra at a hearing on Petitioner's motion to suppress.  The court observed that Parra only answered leading "yes" and "no" questions to clarify what he would testify to at trial, but there was no testimony that Petitioner actually withdrew from the charged offenses and therefore counsel did not err by not using the testimony. App. Exh. W. at 143-44.

A review of the suppression hearing transcript reflects that Parra merely reaffirmed his previous deposition testimony that Petitioner "chickened out" from being the person who initially entered Alban's house with Creedon.  App. Exh. G. at 688. Thus, the testimony would merely have been cumulative and repetitive of the deposition testimony.  Even if counsel could have offered the additional testimony, in light of the overwhelming evidence that Petitioner did not withdraw from the crime, there is no reasonable probability that the outcome of the trial would have been different had trial counsel used the additional testimony.  On this record, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, Federal law.

### Claim Eighteen: trial court error in admitting photographs of the victim

Petitioner contends that his right to a fair and impartial trial was violated by the trial court's admission into evidence of photographs of the victim at the crime scene and in the medical examiner's office.  This claim was rejected by the state court on direct appellate review of Petitioner's conviction.

In admitting the photographs, the trial court reviewed each one and concluded that they were relevant to show how the crime occurred and the manner of the victim's death.  The court determined that the probative value of the photographs outweighed any danger of unfair prejudice.  App. Exh. C. at 89-92.

As noted, a state trial court's evidentiary rulings do not provide a basis for federal habeas relief absent a showing that the ruling affected the fundamental fairness of the trial.  *See Sims*, 155 F.3d at 1312; *Osborne v. Wainwright*, 720 F.2d 1237, 1239 (11th

Cir. 1983) (habeas court will determine claim of fundamental unfairness as federal constitutional issue and not as state evidentiary issue). "The introduction of graphic photographic evidence rarely renders a proceeding fundamentally unfair." *Jacobs v. Singletary,* 952 F.2d 1282, 1296 (11th Cir. 1992)

The Court has reviewed the Appendix copies of the photographs admitted by the state court, and finds that while the subject matter of the photographs is necessarily unpleasant, there is no suggestion that they did not accurately portray the scene and the victim's injuries, and they were plainly probative of the State's case.  In view of the record as a whole, it cannot be said that the admission of the photographs rendered Petitioner's trial fundamentally unfair.   Alternatively, the Court concludes that the state court's denial of relief on this claim was not contrary to, or an unreasonable application of, Federal law.

### Claim Nineteen: Ineffective assistance regarding prosecutor's comments

Petitioner contends that his trial counsel rendered ineffective assistance by failing to object to comments in the prosecutor's argument that Petitioner says improperly bolstered the testimony of the State's witnesses.  He contends that it was misconduct for the prosecutor to tell the jury that they "heard" Petitioner's inculpatory statements from his own mouth, when they only heard recitations of the statements by other witnesses. He contends that the prosecutor's reference to the victim's "poor family" was so highly inflammatory as to vitiate the reliability of the verdict.  Doc. 1 at 38-39.  The state court rejected this claim on postconviction review because it found that the comments were based on reasonable inferences from the evidence, and were not improper in light of the

arguments as a whole, including the arguments of defense counsel.  *See* App. Exh. W. at 146-47.

Based upon the state court's assessment of the prosecutor's comments, which found *no* prosecutorial misconduct, it is clear that the objections that Petitioner argues his counsel should have interposed would not have been successful.   Accordingly, the state court's rejection of this ineffective-assistance claim does not reflect an unreasonable application of *Strickland's* performance prong.  Moreover, viewing the comments in the context of the trial evidence and counsels' argument as a whole, there is no reasonable probability that the outcome of the proceeding would have been different but for counsel's failure to object to the comments.  Accordingly, Petitioner has failed to show that the state court's rejection of this claim reflects an unreasonable application of *Strickland's* prejudice prong.

### Claim Twenty: Ineffective assistance regarding right to assist in defense

Petitioner contends that his trial attorneys failed to adequately consult with him and allow him to assist in his defense in several respects.  In response to the Respondent's argument that this claim is repetitive of Petitioner's previous claims, Petitioner concedes that Claim 20 does not warrant additional review.  Doc. 19 at 76.  Accordingly, the Court will not address this claim.[5]

---

[5]Petitioner's claims in this ground relate to (1) speedy trial rights; (2) right to personally confront the New York detectives; (3) counsels' "needless stipulations" that inculpated Petitioner; (4) failure to provide an electronic listening device for sidebar conferences; and (5) failure to ask Petitioner what parts of Parra's deposition were relevant.

**Claim Twenty-One: Ineffective assistance regarding insanity and intoxication**

Petitioner contends that his counsel performed deficiently by failing to investigate the viability of insanity and intoxication defenses.  In response to the Respondent's argument that he would not have been entitled to assert such defenses, Petitioner concedes that his attorney may not have been ineffective in this regard.  Doc. 19 at 76. Accordingly, the Court concludes that this claim has been abandoned and it will not be further addressed.

**Claims Twenty-Two and Twenty-Three: Cumulative error**

Petitioner contends that he is entitled to habeas relief due to the cumulative effect of trial court errors in denying his motions to suppress and admitting gruesome photographs, and due to the cumulative effect of counsels' errors, as asserted in his individual claims.  Doc. 1 at 44-47.

Claims of cumulative error do not provide a basis for Federal habeas relief "where a petitioner's 'state-court trial was not fundamentally unfair.'" *Pope v. Sec'y, Dept. of Corr.*, 680 F.3d 1271, 1297 (11th Cir. 2012) (quoting *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) (ineffective assistance claims); *Morris v. Sec'y, Dept. of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (cumulative trial court errors).   Because none of Petitioner's individual claims of error or prejudice have any merit, as explained above, there is nothing to accumulate.  *Morris*, 677 F.3d at 1132.  Accordingly, Petitioner is not entitled to Federal habeas relief on his cumulative-errors claims.

**Claim Twenty-Four: Illegal sentence**

Petitioner contends that his sentence is illegal because he did not receive credit

for the time spent in the Alachua County Jail while he was awaiting transfer to the DOC.

Doc. 1 at 46-47.  In response to the Respondent's argument that under Florida law such

jail time would be accounted for by the DOC if and when Petitioner's life sentence

without parole was reduced to a term of years or set aside, Petitioner concedes that his

argument does not provide a basis for review.  Doc. 19 at 80.  Accordingly, this claim will

not be addressed further.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that satisfy the

showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be

filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing

Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional

right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

Therefore, the undersigned recommends that the district court deny a certificate of

appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the

parties to submit arguments on whether a certificate should issue."  Thus, if there is an

objection to this recommendation by either party, that party may bring this argument to

the attention of the district judge in the objections permitted to this report and

recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2. That a certificate of appealability be **DENIED.**

**IN CHAMBERS**  this 7th day of August 2012.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.